Nicholson, C. J.,
delivered the opinion of the court.
Thomas Dardis died in 1809, intestate and without issue, leaving two brothers, Edward and James Dardis as his heirs. He was the owner of a lot in Knoxville, which descended to his two brothers Edward and James. In 1836, Edward aliened, relinquished *285 and quit claimed all further claim to all or any of said lot to his brother James. Defendant in error, who is an heir of Edward, brought ejectment against plaintiff in error, who claims under said conveyance from Edward to James. The Circuit Judge held that the conveyance from Edward to James communicated only a life estate, because the word “heirs” was not used in the instrument, and hence, that upon the death of James the title was complete in the heirs of Edward, of whom defendant in error was one. Upon this holding of the Judge, the jury found for the defendant in error, on which there was judgment, from which plaintiff in error appealed in error to this court.
The controlling question in the ease is as to the legal effect of the conveyance from Edward to James Dardis in 1836. The language of the conveyance is: “ I, Edward Dardis, do hereby alien, relinquish and quit all further claim on my part to all or any of said estate.”
It is not disputed that, as the law stood in 1836, this deed, for the want of words of inheritance, communicated only a life estate to James Dardis, unless this case falls within some of the exceptions to the general rule of law, as to the necessity of words of inheritance for communicating a title in fee.
Upon the death of the original owner, Thomas Dardis, the title of the land was vested by descent in his brothers Edward and James. There is no conflict in the authorities to the effect, that as between joint tenants, a release from one to another, without *286 the word “heirs,” is effectual to vest an absolute fee-simple estate. Shep. Touchstone, 208 (U. S.); Id., 326; 4 Kent, 364-6; 1 Washb. Real Prop., 558 (top page); Id., 127. By the common law, therefore, it is manifest that the deed of release from Edward to James Dardis would vest him with the fee if James and Edward were joint tenants.
But by the common law a joint tenancy can only be created by purchase or act of the parties, and .not by descent or act of the law: 2 Blk. Com., 180; 2 Washb. Beal Prop., 554. As James and Edward Dardis derived their title by descent, they were not joint tenants, but coparceners. The term coparceny is applied to estates of which two or more persons form one heir. The title of co-parcener is always by descent. They resemble joint tenants in having the same unities of title, interest and possession. But they differ in this, that each parcener has an inheritable interest, and the doctrine of survivor-ship does not apply to them: 4 Kent, 366. They agree, however, in the mode of conveyance by one coparcener to another; a deed of release by one co-parcener to another will convey a fee simple without words of inheritance, since he already has a seizen in fee simple of the estate by descent: Co. Lit., 273, 1 Washb. Beal Prop., 561.
The distinction between coparceny and estates in common is so slight and is of so little practical importance that the former has nearly given way to the familiar form of joint estates in universal use, tenancy m common.
*287 Tenants in common bold by unity of possession, but may bold by several and distinct titles, or by title derived at tbe same time, by the same deed or will, for, by the common law, tenancy in common is created by deed or will, and not by descent. Each owner in respect to bis share, has all the rights, except that of sole possession, which a tenant in sev-eralty would have, and if he wishes to convey his share to his co-tenant, he must do so by the same kind of deed that would be necessary to convey it to a stranger. A mere technical release would not, as in cases of joint tenancy and coparceny, have that effect: 1 Washb. Real Prop., 563.
It follows that if James and Edward Dardis were either joint tenants or co-parceners, the deed of release from Edward to James conveyed to him the fee simple, but if they were tenants in common the release only conveyed to James a life estate. We have said that by the common law they were not joint tenants, because they derived this title by descent. We have seen that by the same law tenants in common did not take by descent, and therefore that they must be coparceners, unless this estate has been converted into a tenancy in common by our statutes.
The intestate Thomas Dardis died in 1809, when the act of 1784, c. 22, ss. 2 etc., as amended by the act of 1796, c. 14, was in force. By these statutes the lands of an intestate descended to all his sons and daughters, to be divided amongst them equally, share and share alike, as tenants in common in severalty and not as joint tenants, and if such intestate should die *288 without issue, his lands descended to his brothers and sisters equally, share and share alike, as tenants in common and not as joint tenants.
It follows that James and Edward held the land descended from Thomas Dardis as tenants in common and upon the doctrine of the common law already stated, one could convey his fee simple title to the other, only by deed with words of inheritance. This was the law in 1836 when the release was executed, and so continued until 1852, when it was altered by statute.
It follows that James Dardis took only a life estate. The settlement of this question disposes of the other questions presented.
The judgment of the court below was correct and is affirmed.
An application for a rehearing having been made, on the first day of November, 1871, NicholsON, C. J., delivered the following opinion:
We are requested to reconsider and rehear this cause. The question in the case is, whether the title to the land in controversy, which descended from Thomas Dardis to his two brothers, James and Edward, was such that a deed of release from one to the other passed the fee simple title without words of inheritance. As the deed of, release was executed prior to the act which dispenses with the necessity of using words of inheritance in conveyances, the decision of the question depends upon the con *289 struction of tbe act of 1784, c. 22, and the principles of the common law as applicable to that construction.
In the opinion delivered at a former day of the term we held that by the act of 1784, c. 22, s. 3, James and Edward Dardis took by descent from their brother Thomas, estates as tenants in common; and, as by the common law, one tenant in common couid convey the fee simple to a co-tenant only by deed with words of inheritance, that therefore the deed of release from one to the other without such words of inheritance passed only a life estate.
In this it is insisted with much earnestness and ingenuity, that we have fallen into error, and we are called upon to reconsider the question. We have done so cheerfully, and have given to the arguments submitted a careful examination, and will proceed to state our conclusions.
The preamble of the act of 1784, c. 22, is as follows :
“ Whereas, it will tend to promote that equality of property, which is of the spirit of a genuine republic, that real estate of persons dying intestate should undergo a more general and equal distribution than has hitherto prevailed in this State.”
The title or caption of the act is as follows:
“An act to regulate the descent of real estates, to do away entails, to make provision for widows,” etc.
The leading objects of the statute are clearly expressed in the preamble and caption: to do away entails as inconsistent with the spirit and principle of a genuine republic, and so to provide for the descent of *290 a real estate as that it should undergo a more general and equal distribution. To accomplish these objects, the first and second sections provide:
“When any person shall die seized or possessed of, or having any right, title or interest in and to any estate, or inheritance of land, or other real estate in fe<| simple, and such person shall die intestate, his or her estate or inheritance shall descend in the following manner, to-wit: to all the sons (and by the act of 1795, c. 14, daughters), to be equally divided amongst them, share and share alike, as tenants in common in severalty, and not as joint tenants,” &c.
“See. 3. If any person dying intestate should, at the time of his or her death, be seized or possessed of, or have any right, title or interest in or to any estate, or inheritance in lands, or other real estate in fee simple, and without issue, such estate or inheritance shall descend to his or her brothers (and by the act of 1796, c. 14, sisters), as well those of half blood as those of whole blood, to be divided among them equally, share and share alike, as tenants in common, and not as joint tenants, and each and every one of them shall have, hold and enjoy in their respective parts or portions, such estate or inheritance as the intestate died seized or possessed of, or entitled unto,” „&c.
It is assumed in the argument that in carrying the substance of these statutes into the Code, language is used which conveys a different meaning from that used in the act of 1784. The language of the Code, s. 2420, is: “The land of an intestate- owner shall *291 be inherited in the following manner by his lineal descendants, collateral kindred or ascendents.” It is insisted that in the act of 1784 the Legislature was careful to use language clearly recognizing the distinction between estates and the property in which estates were held. It is added in the argument, if an intestate shall die seized of an estate or inheritance in lands or other real estate, such estate shall descend to his or her brothers, etc. But this is not a correct statement of the language of the act of 1784. The true reading is, if an intestate shall die seized of an estate or inheritance in lands or other real estate in fee simple, such estate, or inheritance, shall descend to his or her brothers, etc. This language was intended to provide for the descent of the land of an intestate owner, and is synonymous in its meaning with the language of the Code. In both the meaning is, that an intestate’s land or real estate, held by him in fee simple, whether by legal or equitable title, is to descend as provided.
By the language of the act of 1784, the intestate’s land or real estate descended to his brothers and sisters, to be divided among them equally, share and share alike. By these words the right of survivorship was cut off and abolished, and if the provision had stopped here, the brothers would have been tenants in coparceny; but the section proceeds: “as tenants in common, and not as joint tenants;” and to make the meaning still more palpable, the language is added: “and each and every of them shall have, hold and enjoy, in their respective parts or portions, such estate *292 or * inheritance as the intestate died seized or possessed of or entitled unto.” The meaning is that the intestate owner’s land shall descend to his brothers and sisters as tenants in common, and not as joint tenants; that is, each tenant shall have, hold and enjoy his share by the same title by which the intestate held it.
It is not to be presumed that the authors of the act of 1794 did not fully comprehend the fixed meaning of the terms “joint tenants” and “tenants in common,” used by them, as well as the term “coparcen-ers,” which is the tenancy which it is insisted they meant to create by •their language.. It is matter of history that the men who controlled the early legislation of North Carolina were thoroughly learned in the common law. They used common law terms to convey the ideas known to have been fixed upon them by a long course of judicial precedents.
When they enacted that lands should descend to brothers and sisters, and be divided among them share and share alike, as “tenants in common,” and not as “joint tenants,” they were alluding to the nature and character of the estate which was to descend to and vest in the brothers and sisters. If they had meant that they were to take the lands as tenants in co-parceny, they would have so said, instead of using the language that they should take an estate as tenants in common. We have a right to assume that they knew the difference between tenants in common and tenants in coparceny, and we are bound to conclude that when they used the words “tenants in *293 common,” they used the language which best expressed their meaning.
But the authors of the act of 1784 were not content to indicate their intention by merely declaring that lands descended to brothers and sisters should be “divided among them equally, share and share alike, as tenants in common, and not as joint tenants,” but they proceed expressly and particularly to define the character of the tenancy by which the estate is to bo held — they say, “each and every of the tenants shall have, hold and enjoy in their respective parts or portions such estate or inheritance as their intestate had.” It is a leading characteristic of tenancy in common that the tenants are deemed to have several and distinct freeholds: 4 Kent., 368. By the very terms of the statute the brothers and sisters are to have equal portions of the land descended; it is subject to division, share and share alike, and each tenant is to have his respective share by the same title as the intestate from whom it descended. Here is unity of possession, and each tenant is to be severally seized of his share. These are the well settled characteristics of a tenancy in common.
But it is insisted that in addition to unity of possession tenants in common by descent, under this statute, also have unity of title, and upon this fact the argument is pressed, that one tenant in common by descent can release to another tenant in common. It is conceded that if tenants in common by descent hold by unity of 'title, by the doctrine of the common law a deed of release without words of inheri *294 tance to a co-tenant carries the fee simple title. But we have seen that the legal effect of the act of 1784 was to destroy the unity of title of such tenants, thus taking away from the tenancy by descent that distinctive feature of a joint tenancy, the unity of title. The reason therefore on which the common law rested ceases to operate when the unity of title is destroyed.
This question is thus presented and discussed in 4 Kent, 367: “ Tenants in common are persons who hold by unity of possession, and they may hold by several and distinct titles, or by title derived at the same time, by the same deed or descent. In this respect the American law differs from the English common law. This tenancy, according to the common law, is created by deed or will, or by change of title from joint tenancy or coparceny, or it arises in many cases by construction of law. In this country it may be created by descent as well as by deed or will, and whether the estate be created by the act of the party, or by descent, in either case tenants in common are deemed to have several and distinct freeholds, for that circumstance is a leading characteristic of tenancy in common. Each tenant is considered to be solely or severally seized of his share.”
It is next insisted that it is apparent upon the face of the deed of release that Edward Dardis intended thereby' to convey his whole title to his brother James, and that this apparent intention ought to prevail over a technical rule of the common law, the *295 reason for which has long since ceased. Technical rules of law, when they have become rules of property by a long train of judicial precedents, are as binding on the court as statutory laws. No rule of property was more firmly fixed than that which required the use of words of inheritance in a conveyance, to carry the fee simple title. Yet this was a technical rule, which overruled the apparent intention of parties as manifested in their conveyances, and which maintained its position as a rule of property until it was abolished by a recent statute. This technical rule of law and rule of property was in force when the deed of release in this case was made, and we have no alternative but to follow the law. We are therefore constrained to adhere to the opinion heretofore announced, and to disallow the petition for rehearing.